ROANE, Judge.
Tins is a bill by the devisees of T. Nelson, against the surviving husband and children of Elizabeth Harwood, deceased, li states, that Edward Harwood being seised in fee tail, in right of his wife Elizabeth, of a tract of land, sold the same for a valuable consideration to T. Nelson, (for which the money has been paid.) That Edward Harwood, with a surety, on the 12th of November, 1774, gaxc a bond conditioned for the procuring an act of Assembly to dock the entail, and convey the same in fee to the said T. Nelson; and, that the said Edward, and Elizabeth Harwood, afterwards on the 7th of December, 1774, by a deed of bargain and sale duly recorded, and in respect of which she was duly examined, reciting her title as above, conveyed the same in fee to *346 the said T. Nelson, with a covenant for quiet enjoyment, and that grantees would do all and every act and acts, and procure all further necessary assurances for perfecting his said title therein, as he or his heirs should advise or require. It further states, that Mrs. Iiarwood. survived the act of 1776, converting estates-tail into fee simple. It also states, that in 1774, an attempt was made to procure an act to dock the entail, which was frustrated by the dissolution of the Assembly; and, that in June, 1775, a similar bill was prepared, and received thejoint concurrence of the Burgesses and Council, but did not receive that of the Royal Governor, he having withdrawn himself on board an armed Britannic vessel, and refused to come to the seat of government, and exercise the functions of his office. It prays, that this latter defect may be considered as supplied, or that the title of the plaintiffs may be decreed to be perfected, on some of the grounds on which Courts of Equity exercise their jurisdiction in perfecting conveyances, and supplying defects in titles.
There is a demurrer to this bill, and also to an amended bill, stating the payment of the purchase money to have been made to a trustee, named in the act before referred to, for want of equity: Which demurrer was allowed by the Chancellor.
At the outset of this business, a most momentous and important enquiry presents itself to us: Namely, whether an act which had received the sanction of the people of Virginia through their Burgesses, which had also been ratified by the Royal Council, and was only not approved by the Royal Governor, because he had abdicated his government, nor could be carried to our King himself, for his assent, because he had made open war upon us, his people, shall, under all the circumstances of the case, be considered as valid, or as entirely null and void ?
Finding myself not supported in my present impressions, on this question, by gentlemen whose opinions I respect, I state them with diffidence; but yet as an act of duty, flowing from an high sense of the importance of my present situation, and a correspondent anxiety on my part to act according to the best of my judgment and ability.
I will premise, that I am not fond of bringing into the tribunals of justice, political considerations: But, sometimes it does happen, that questions of political law do present themselves. On these occasions, although I am as much an advocate for settled government as any man, *347 1 shall be free to say, that in dark and doubtful eases, where principles must he resorted to, it is my wish to be governed by those noble principles which achieved the Revolution; which acknowledged the rights, and the power of the people; and consider Kings and Magistrates as their trustees and servants, and at ail times amenable to them, and liable to he cashiered or deposed for misrule and maladministration: Which admit the right of Revolution, although it is conceded that such right ought not, in prudence, to ho assert ed for light causes.
These remarks tend to shew, that in times of Revolution, those formulae are entirely secondary, which are imposed with a yiew to ordinary times, and settled government; and which do not contemplate, nor are suited to a state of society radically and essentially different.
As this cause can be decided upon a point less momentous, and equally clear, with the one now in question, my intention at present is only to reserve to myself liberty to, deliberate and decide upon this great question, if it should occur hereafter. I shall not, therefore, now enquire what; authority is conceded in England to an ordinance, i. e. a statute which has not the Royal assent; nor enumerate instances, in which, in extraordinary times, the usual formalities attending the summoning a Parliament, and the passing laws, have from the necessity of the case been in that country dispensed with; nor shall I contemplate at present, the magnitude of this question, as it respects all laws passed during a state of interregnum,, nor whether the clear, though informal expression of the public voice, as at the time, is not equivalent in its sanction, to a posterior law of recognition, passed indeed by a settled government, but perhaps liable to most of the objections, which apply to retrospective laws.
These and other great questions touching this subject, I submit to better consideration, whensoever they shall become necessary to be decided; lest, however, in the diversity which exists, as to all political speculations, I should he supposed by some to utter visionary ideas, I will beg leave to fortify what is here said by the opinions of a most eloquent and enlightened writer; and one who has most successfully combated and confuted the slavish doctrines of an eminent statesman: 'A statesman who, instead of aspiring (as he might have done) to a niche in the temple of liberty, has chosen to go down to posterity pensioned and despised.
*348 The writer, I mean, is Mackintosh: “ They,” says he, (meaning the States General,) “had been assembled as an ordinary Legislature, under existing laws. They were transformed by these events into a National Convention, and vested with powers to organize a Government. It is in vain that their adversaries contest this assertion by appealing to the deficiencies of forms. It is in vain to demand the legal instrument that changed their Constitution and extended their powers. Accurate forms in the conveyance of power, are prescribed by the wisdom of law, in the regular administration of States. But great Revolutions are too immense for technical formality. All the sanction that can be hoped for, in such events, is the voice of the people, however informally or irregularly expressed.” [ Vindiciæ Gallicæ, p. 60, 3 Ld. ed.]
I shall next consider upon ordinary grounds, how the title of the plaintiff stands as against the heirs of the feme, under the deed of the 7th December, 1774, she having survived the enactment of the act of 1776, converting estates-tail into fee simple.
I entirely accord in principle with the reasoning of the Chancellor, relative to the power of the wife to bind her estate and her heirs, having regard to the interest of the husband, and the idea of coercion by him being removed.
Our law, acting upon this principle, has established a solemn mean by which a wife may convey, by privy examination entered of record. In this respect greater regard is had to .the rights of the wife, than in England; for, there, she cannot reverse a fine, although she is not examined by the Judge; but the construction of the law is only as it were directory to the Judge, that he should not receive the fine without such examination. 1 Bac. Abr. 496.
The case before us, too, being that of a solemn agreement of record, steers clear of those decisions in which it has been held that the agreement of the wife in pais shall not bind the husband.
The act of 1748, p. 143, [5 Stat. Larg. 410,] enacts, “ that all deeds and conveyances, &c. by husband and wife, (she being first privily examined,) shall be good and effectual in law, and as valid to convey and pass over all the estate, right, title, interest, claim, and demand of the wife, and her heirs, in and to the lands so conveyed, &c. whether the same be in right of dower, or fee simple, or whatever other estate (not being fee tail) she may have therein, as if the same had' been done by fine and recovery, &c. ”
*349 After this explicit declaration, it is the least to say, that the examination here stands on as high ground as the fino and recovery in England; and the before mentioned consideration. that such lino may hind her without her examination, (which is not the case under our act,) certainly fortifies that construction.
But further, this act follows up the construction of the statute de da ms, by making the exception of the estate-tail, which estate shall not pass here, (or there,) except according to the terms of the statute, in favor of the heirs in tail.
This act, however, according also with the English decisions in this respect, with the single exception of not passing the estate-tail, declares all conveyances, &c. with such examination, Stc. to be good and effectual in law; i. e. I presume, good and effectual in a sense commensurate with the terms of the deed.
Bearing these principles and distinctions in mind, let us advert to some of the English decisions.
In Wooter v. Hile, 1 Mod. 291, [2 Saund. 177,] it was held, that, covenant would lie against a wife surviving her husband, upon a covenant for quiet enjoyment, in a fine suffered by him and her. This is, perhaps, a stronger case than ours: for, there, it does not appear that it was the wife’s land, which was ihe subject of the fine. If so, she. had no interest in it, and it was solely on her solemn covenant that she was held to be responsible.
In 1 Bac. Abr. 496, [Gwil. ed.] it is said, that husband and wife may join in a fine to convey her inheritance. And 2 Bac. Abr. 553, an agreement that A. and his heirs should enjoy the entailed lands, shall be executed, but the issue is not bound until the fino be levied.
From the foregoing remarks and cases, I think it clearly results, that adeed of a feme covert touehingher inheritance, In conjunction with her husbaud, and solemnly acknowledged by her to be her freo act, is competent to bind her to the extent thereof, with the exception before stated, relative to passing an estate-tail; and that an agreement to pass a fine, or permit an act to pass docking the entail, is always obligatory on the person so agreeing until executed.
In this view, Mrs. Harwood was bound to carry her agreement into execution, until the act of .1776 passed, which vested her with the fee simple property. After that sera, a shorter and plainer course presents itself to us, and she and her heirs should be decreed to do that, directly, *350 which, before, could only be done circuitously, i. e. to convey the plaintiffs her inheritance.
If it should be said, that this process will injure the heirs in tail, for whose benefit lands were intended to be settled in lieu, the answer is, that this would have been, also, precisely the case by the operation of the act of 1776, if such lands had been so settled, immediately after the agreement, as these by the operation of that act would have been absolutely vested in the mother.
I think that the decree of the Chancellor is erroneous, and that the demurrer ought to have been over-ruled.
FLEMING, Judge.
The first question is, whether the deed from Harwood, and wife, was wholly void, or, so far only as not to defeat the entail, but good for every other purpose ? The 5th section of the act of 1748, declares, that the deed of husband and wife, where she is privily examined, “shall be good and effectual in law, and shall he as valid to convey and pass overall the estate, right, title, interest, claim, and demand, of such wife, and her heirs, in or to' the lands, tenements, or hereditaments, so granted or conveyed, whether the same be in right of dower or fee simple, or whatsoever other estate, not being fee tail, she may have therein, as if the same had been done by fine and recovery, or by any other ways or means whatsoever.” So that, with the single exception of the fee tail, which is afterwards provided for in the 14th section, the deed was good for every purpose of conveying the estate and interest, or estopping the right, of the wife and her heirs; who were not at liberty to say that it was void generally, but as to the excepted case only: For, a deed may be void as to one purpose, and good as to another.
This leads to the second question, whether Mrsi Harwood was not bound by her covenant to make further assurance; and, consequently, after she acquired the fee simple, under the act of 1776, to confirm the title, which was to have been conveyed under the deed ? Upon this point, the reasoning of the Chancellor, although not followed up in his decree, is very forcible: His words are, “ When husband and wife, who have all the power which she had in her state of solitude, conspiring together in a conveyance of her inheritance, and observing legal forms and ceremonies, agree to guarantee the title to the purchaser, the agreement is not less obligatory on her, than a like agreement by her, if she had not changed her state would have been, *351 for his junction with her in the act, removing the single impediment to the energies of her power and will, restored to those faculties their pristine vigor. This proposition is believed to be the foundation of English judicial decisions, that a married woman is obliged by covenants in a fine. The forms and ceremonies requisite by law to create this obligation, in the case of a married woman, are, a deed executed and acknowledged, as well by the husband, to shew his consent, without which obligation cannot arise, as by the wife, and her declaration upon a privy examination by the Court, that the execution and acknowledgment of the deed were with her free consent, which was indeed essentially necessary; but, which was only necessary to make the covenants in which she joined with her husband, as much her acts as if she had executed the deed whilst she was unmarried.” This clearly evinces the obligation which the wife, by her covenant, came under to confirm the title of the purchaser, and make him complete owner of the estate as soon as she was enabled to do it. She was bound to have aided the application to the Legislature for a special act to dock the entail: and, consequently, after the general law upon that subject had unfettered the estate, and made her proprietor of the fee simple, she was bound to convey that also, to the purchaser.
But, this not having been done in her life-time, a third question arises, namely, whether her representatives are hound to do it? It is objected that they are not, because no equivalent in value was settled on or received by them. But, that: is not important; I. Because the equivalent would have been turned into a fee simple, which the husband and wife might have conveyed away from the issue; 2. Because the act of 1776’, has destroyed the interest of the issue altogether, and, therefore, every argument predicated upon a supposition of their rights, entirely fails.
If. follows, that the wife being bound by the covenant to make further assurance, the plaintiffs were right in coming into a Court of Equity to ask a specific performance of it; and, consequently, that the decree ought to he reversed, and the plaintiffs allowed to compel a conveyance and complete their title.
CARRINGTON, Judge.
A great deal of the matter stated in the bill might have been omitted, as the private act of Assembly had nothing to do with the cause; for, not having been perfected, it was never a law.
*352 The case, then, depends upon the deed; and the question is, whether that, on account of the coverture of the wife, was wholly void; or so far only as respected the estate-tail?
The covenant' of the wife, to make further assurance, was obligatory on her in consequence of the privy exami.nation; for, that was equal to a fine and recovery; which, it is admitted on all sides makes the covenants of a feme covert binding on her. Plowd. 57, 82; 1 Bac. Abr. 496; 1 Mod. 292. Therefore, when she acquired the fee simple in 1776, she was under an obligation to convey it to the purchaser: For, the act of 1748, merely excepts the entail, and declares that the deed shall be valid as to convey every other interest of the wife. Old Edit. Laws, 143: So, that as to. every legitimate purpose, the deed was effectual. But, the sale was lawful; because the deed, not affecting the entail, only passed the life-estate of the grantors, which they might convey without violating any law; and, therefore, she was bound to complete the title of the purchaser as soon as she had capacity: For, it is like the case of Thornton v. Corbin, ante, 384, in this Court the other day; in which it was held that a covenant to convey as soon as the party should recover the estate, was obligatory.
But, the rights of the issue are urged: That argument, however, has no weight with me; because they have none; the act of 1776, having entirely defeated them: So, that the completion of the contract will not put them in a worse situation with respect to the right in Jtail, than they would be without. But be that as it may, they are legally bound by the covenant of their mother, sanctioned, as it has been, by the privy examination; of course, they are. under the same obligation to convey that she was. And upon the whole, I am for reversing the decree, over-ruling the demurrer, and sending the cause back, in order that the defendants may be compelled to answer the bill.
LYONS, Judge.
A Court of Equity, in decreeing a specific performance, is constantly regulated by three great principles; namely: 1. That the contract is to be judged of, as matters stood at the time of entering into it: 2. That the Court will not alter or extend the agreement of the parties: And 3. That equity will not decree a performance when the consideration for it fails.
These principles apply strictly to the case before the Court. For, when the present contract was entered into, *353 the entail could not have, boon docked but by an act of Assembly, which was never made without an equivalent estate was settled to the same uses: A circumstance, of considerable importance in the present ease; because being an express declaration of a general statute, tiie wife is presumed to have known it, and acted under the impression. In fact, it appear.-; that she did know it, and claimed the benefit of the rule of Jaw; since she joined in the petition to the Legislature for an act to enable her to convey upon the usual terms: Which proves that she neither did, nor perhaps would have consented on any other. The case, therefore, is within the influence of all the principles; for, considering the contract as matters stood at the time, it is manifest that a decree for a performance, under the present circumstances, would be to alter the agreement of the parties, and to extend it beyond what was originally contemplated, without the intended compensation.
The argument drawn from the covenant and privy examination of the wife, carries no conviction to iny mind: For, the general words in the act of Assembly are to be understood of such conveyances as the feme might lawfully make; and the covenants being necessarily confined to the críate conveyed, could only extend 1,o such acts as she might lawfully perform: Which, in this case, was merely' to pass the interest for her own life, and to petition the Legislature to enable her to convey the entail. The personal covenant, therefore, if obligatory at all, which is doubtful,* ought to be confined to these two objects; because, at that time, she could not, by her own act, defeat the entail, and (¡very attempt to do so, being contrary to the statute, was illegal and void. Therefore, her covenant ought, at most, to be understood to mean that she would assure further, when an act settling an equivalent estate, should pass: For, that was a probable event, but it was not foreseen that a general law, like that of 1776, would be enacted; and, therefore, neither party can reasonably be supposed to have contemplated such a thing.
It is said, that the privy examination is declared by the act of Assembly to be equal to a line and recovery in England; and, therefore, that the covenant, in the present case, will operate as extensively as those under that species of conveyance there. This consequence is not quite evident *354 however: For, the act of 1748 only says, that the deed shall pass the estate of the wife as effectually as if a fine and recovery had been suffered, and not that the wife’s personal covenants shall bind her. Of course, the inference is not altogether clear. However, let it be otherwise; and still it will not help the appellant’s case; because, as before observed, the covenants running with the land, have a necessary reference to the estate, for the wife’s life, actually conveyed; and, therefore, will not extend to future interests. Besides, a recovery suffered against tenant in tail, only conveys the estate of which he is actually seised at the time, and can lawfully convey in that manner. 2 Black. Com. 359; Bro. Abr. Tail, 32; therefore, the example is not so apposite as it might, at first sight, appear.
But, leaving the legal discussion, and returning to the Court of Equity. We have already seen, that that Court never decrees a specific performance where the consideration has failed. Now, that, in the present case, was the equivalent estate; which not having been settled, the consideration fails; and, therefore, no decree for a specific performance ought to be made. This, however, is not all: For, it is a rule, that no act of tenant in tail shall be carried further in equity, than in law. 1 Fonbl. Treat. Eq. 290. If, then, the law would not permit her to defeat the issue, without an equivalent; and would consider any covenants for that purpose void, ought a Court of Equity to go further, and enforce them? To have created even a semblance of equity, Mr. Nelson should, either out of his own money, or the damages recovered in a suit against the husband; (whose estate was first liable, [Tate v. Austin,] 1 P. Wms. 264, 2 Vern. 689, S. C.,) have purchased an equivalent estate, and settled it, or offered to have settled it, on the wife and issue, upon receiving- a title to that which was entailed.
It was argued that the issue were not worse off, than they would have been without the covenant; because, the act of 1776 would have turned the entail into a fee; and, consequently, their rights would have been equally defeated. But, the obvious answer is, that their being better, or worse off, does not legalize the transaction, if it was unlawful at the time. However, the truth is, that they would have been in a better situation without the covenant; because, the fee would have been in the wife, who, pursuing her former notion, would, probably, not have conveyed it without an. equivalent; s„o that the estate it- *355 self, or the equivalent, would have descended to them at her death.
Upon the whole, I am of opinion, that the wife was not bound, in law, or conscience, to confirm the title, when she acquired the fee in 1776, without au equivalent settlement, as was intended at the time of the contract; and, consequently, that the appellants have no equity. Of course, I think the Court of Chancery did right in dismissing the bill; and that the decree ought to be affirmed.
PENDLETON, President.
The first question is, whether the conveyance of Harwood, and his wife, to Nelson, is wholly void as to both, by the 14th section of the land law of 1748, or whether it is only so far void as it tends to defeat the estate-tail, hut good for every other purpose? The words of the clause are, that all fines and recoveries, and all other acts and things done for the purpose of docking, cutting off or defeating an estate-tail, shall be void. From which, it is obvious that the preservation of the estate-tail vvas the object of the Legislature; and, so far as the deed tended to defeat that estate, it is declared void.
But, surely, if a tenant in tail takes upon himself to sol] and convey the land, in fee, with a general warranty, altho’ it will not deprive the issue, or a remainder-man, of the land, yet it will not only pass the estate for life of the tenant conveying, but will subject him to make satisfaction to the purchaser for the full value of the land, if recovered by the issue; and this seems to be the settled construction of the statute de donis, which has a like clause declaring conveyances made by tenants in tail, to be void.
Suppose a man, tenant in tail, with the reversion or remainder in fee in himself, if he dies without issue, makes a conveyance in fee, and afterwards dies without issue, the conveyance, so far from being void, passes an absolute estate to the purchaser, as derived out of both estates of the vendor. Upon this point, therefore, I am of opinion that Harwood, the husband, is bound by all the covenants in this deed.
We then come to consider the case of the wife, under the fifth section of the same law; on a fair construction oí' which, it will read thus: the conveyance of husband and wife, provided she be privily examined, shall be good and effectual in law, as if made by line and recovery; and then the clause declares the effect of the conveyance, that it shall pass all her interest, whether dower, fee simple, or *356 other estate, not being an estate-tail. This exception has the same object as the other clause to preserve estates-tail, and not further to interfere with the deed. That a feme covert is bound by her covenants, in a fine and recovery, is incontrovertibly proved by the several authorities; and that an action of covenant may be maintained against her for the breach of any of them. And, this is fully illustrated, and the reason of it fully explained by the Chancellor., shewing that the deed of a feme covert is not made void for want of judgment to protect her interest, as in the casé of an infant, but for want of freedom of will to exercise her judgment, from the supposed power of the husband, which being removed by the privy examination, her deeds are as binding upon her as if she was a feme sole. And having, by the deed, bound her heirs also, when she acquired fee simple, by the act of 1776, she was, and her heirs are, bound by law, and in conscience, to convey that fee to Nelson, in consequence of the covenant to make further assurance; and this suit is proper in equity for a specific performance of that covenant. This, I say, was so fully stated in the decree, that I wonder to see the Chancellor diverted from over-ruling the demurrer, upon the circumstances stated in the decree, respecting a settlement, supposed to be intended, upon the wife, and her issue. For, how does that matter stand ? The bond recites, that Harwood and his wife had agreed to dock the entail, and convey the land to Nelson, in fee; and, as soon as might be, procure an act of Assembly to that purpose.
In the case of Baker v. Child, 2 Vern. 61, it is said, that where a feme covert, by agreement made with her husband, is to surrender or levy a fine, though the husband die before it be done, the Court will, by decree, compel the woman to perform the agreement. This case has, I believe, been since over-ruled. I am sure it ought to be; since her agreement wants that sanction which gives it validity, her privy examination, to manifest her freedom of will. -But, in the present case, that agreement being connected with her conveyance, to which she was examined, it seems to remove the objection. And we are to enquire, how it stands, under the agreement, as to the settlement
With that settlement, it appears to me, that Nelson had nothing to do. The vendors were to procure an act to dock the entail; and were to comply with such terms as the Legislature should require. At that time, an act could *357 not be procured without a settlement; and Harwood and his wife, by the acts which passed the two Houses in 1774 and 1775, proposed satisfactory settlements; though, what they were, do not appear.
So Jar, then, it appears, that Harwood and his wife made fair and honest attempts to perform their engagement, in which they we re disappointed by accidents, in which no fault could be imputed to them; but, the obligation continued upon them to renew the application to the Assembly at their next session, which session was that of October, 1776, when the Revolution produced a change in the system, and rendered it unnecessary for them to propose a settlement, since a general law passed; which vested alee simple in Mrs. Harwood, without substituting any settlement. Having thus acquired a power to perform her covenant, she was, as before observed, bound by law, and in conscience, to confirm Nelson’s title: and her heirs, since, if they claim the land, it must not be as issue in tail, but as heirs in fee simple, are under the same obligation. And it has not been improperly observed, by one of the Judges, that a man conveying, or covenanting to convey, lands to which he has no title at the time, but afterwards acquires one, is bound in equity to perform his. covenants. It is unnecessary to consider any other points in the cause, since a majority of the Court concurring in my opinion, the decree is to be reversed with costs, the demurrer overruled, with such costs as wore occasioned thereby, and the defendants to answer the bill of the complainants. *

[* See Whitbeck v. Cook et ux. 15 Johns. R. 483, 545; Jackson v. Vanderheyden, 17 Johns. R. 167.]

[* It was enacted, by act of Decernher, 20, 1814 c. 283 § 4: "That no covenant or warranty, contained in any deed executed hereafter by any feme covert, shall iu any manner operate upon her, or her heirs, further than to convey effectually from such feme covere, and her heirs, any right of dower, or other interest in real estate, which (he said feme covert may be entitled to at the date of such deed:" and re-enacted at Rev. 1819, ch, 99, § 15, R. C. ed. 1819.]